Reginald Fulton v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-226-CR

REGINALD FULTON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Reginald Fulton pled guilty pursuant to a plea bargain to the offense of possession of cocaine of less than one gram and was sentenced to five years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  As part of the agreement, Appellant retained the right to appeal from the trial court’s denial of his motion to suppress evidence.

In his sole issue, Appellant contends that the trial court erred in denying his motion to suppress evidence.  He argues that the trial court erred because the State did not prove by clear and convincing evidence that (1) Appellant committed a violation of the transportation code; (2) the arrest was not complete at the time of the initial stop; (3) any consent to search was voluntary; and (4) any consent to search was not mere acquiescence to authority.  Thus, Appellant challenges both the initial stop and the validity of Appellant’s consent to the search of his person.

According to the testimony of the arresting officer, Officer White, one night in March, at around 7:10 p.m., Officer White saw Appellant riding his bicycle without a light on an unlit road in the Lake Como area of Fort Worth. Documents prepared by Officer White showed the time as 7:00, 7:10, and 7:15 p.m.  The officer estimated that it had gotten dark at around 6:30 that night. Appellant’s trial counsel stated that sunset occurred at 6:29 p.m. and “about 6:30.”  In his motion to suppress, Appellant’s counsel provided, “the National Weather Service records reflect that sunset on March 16, 2003 was at 6:29 p.m.”  Officer White testified that the location of the stop is a high crime area where drugs are sold.  The officer stopped Appellant for operating a bicycle at nighttime without a headlight.  No light was mounted on the handlebars.

After Appellant stopped, Officer White approached him, explained why he stopped him, and asked for identification.  Appellant did not have identification, so Officer White asked his name and birth date.  Appellant responded that his name was Willie Fulton and gave a birth date.  The officer could not locate any Texas identification card or driver’s license on the mobile computer matching the name and birth date given by Appellant.  Meanwhile, two backup officers arrived.  Appellant continued to maintain that he was Willie Fulton and to give the same birth date.  The officer stated that Appellant had a nervous demeanor and was constantly looking around.  He also tried several times to stand beside the officer instead of in front of him, despite the officer’s instructions.  The officer then asked Appellant if he had anything illegal on his person; Appellant stated that he did not.

Officer White testified that he asked if he could search Appellant, and Appellant said, “Yes.”  Appellant then turned around and slightly raised his arms.  The officer stated that he never threatened or promised Appellant anything to get his consent to search.  At the time Appellant gave consent, Officer White was probably two to three feet away from Appellant, another officer was standing behind Officer White, and a third officer was on the other side of the street, in front and to the left of Officer White, about ten to fifteen feet away from Appellant.  Officer White found two pieces of an off-white rocklike substance in two small blue plastic baggies in Appellant’s front right pocket.  Officer White confiscated the evidence and arrested Appellant.

Officer Hernandez, one of the backup officers, testified that when he arrived on the scene, Officer White had stopped Appellant.  Officer Hernandez did not see Appellant riding the bicycle.  He corroborated Officer White’s testimony that the bike had no headlight and that Appellant was acting very nervous.  He stated that Appellant was looking over both his shoulders as Officer White was running his information on the computer.  Officer Hernandez testified that Officer White asked Appellant, “Do you mind if I search you?”.  Appellant replied, “No, I don’t have a problem with that,” and was turning around and spreading his legs before he even answered.  Officer Hernandez did not threaten Appellant, nor did he see or hear Officer White threaten or coerce Appellant, or make any promises to him, to get him to consent to the search. 

Appellant’s friend, Guy Gould, testified that he first saw Appellant at around 6:00 or 6:30 p.m., pushing his bicycle.  Gould joined him, walking down the street.  He testified that it was still daylight when Officer White stopped Appellant.  He also testified that after Officer White requested permission to search, Appellant stated, “I ain’t got nothing to hide,” and “You can search if you need to, but you won’t find nothing.”  On redirect by Appellant’s counsel, Gould testified that he had provided in his written statement that the officer searched Appellant without permission, and further testified that the search had been “without [Appellant’s] okay.”

Appellant testified that he was not riding his bicycle at the time he saw Gould or Officer White and that he did not consent to the search.  He also admitted that he had a parole violation at the time of the stop and had given Officer White the wrong name.

After the hearing, the trial court found:

[Appellant] was stopped for not having a light on his bike.  He acted nervous in a high crime area, gave a false name to the police officers, that [Appellant] gave permission to search his person, and that no threats or promises were made, and that the — during the search, cocaine was found in his pocket. 

The appropriate standard for reviewing a trial court’s ruling on a motion to suppress evidence is a bifurcated standard of review, giving almost total deference to the trial court’s determination of historical facts and reviewing de novo the court’s application of the law to those facts.
(footnote: 2)  If the trial court did not make explicit findings of historical facts, the appellate court reviews the evidence in a light most favorable to the trial court’s ruling, making the assumption that the trial court made explicit findings of fact, supported in the record, that buttressed its conclusion.
(footnote: 3)
 Section 551.104(b) of the Texas Transportation Code provides:

(b) A person may not operate a bicycle at nighttime unless the bicycle is equipped with:

(1) a lamp on the front of the bicycle that emits a white light visible from a distance of at least 500 feet in front of the bicycle.
(footnote: 4) 

Nighttime has been defined as anytime between thirty minutes after sunset and thirty minutes before sunrise.
(footnote: 5)  Applying the appropriate standard of review, we hold that Appellant was lawfully stopped for violating section 551.104 of the Texas Transportation Code.

Regarding the consent issue, we note that the trial court as fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 6)  Applying the appropriate standard of review, we hold that Appellant’s consent to search his person was voluntary.  Because the trial court  properly concluded that the stop and search were lawful, the trial court did not abuse its discretion in denying Appellant’s motion to suppress.  We overrule Appellant’s sole issue and affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  December 23, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

3:
Carmouche
, 10 S.W.3d at 327-28; 
Guzman
, 955 S.W.2d at 89.

4:
Tex. Transp. Code Ann.
 § 551.104 (Vernon Supp. 2004-05).

5:
Wilson v. State
, 103 Tex. Crim. 403, 281 S.W. 844, 847 (Tex. Crim. App. 1926).

6:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).